CASE 27—PETITION EQUITY—FEBRUARY 27.

# Clay, &c., vs. Clay.

APPEAL FROM FAYETTE CIRCUIT COURT.

1. Henry Clay, by his will, after bequeathing to his two sons, Thos. H. and James B., a fund, provides, that "it is my will and intention that the said fund, in equal portions, shall finally pass to such persons as each of my said sons, as to his part, shall finally direct, by his last will and testament, and, in default of such

will, to their respective *heirs*, according to the Kentucky statute of distributions."
*Held*—That James B. having died without will, his widow was entitled to one third of the fund as distributec.

2. The term "heirs" in a will should be interpreted according to the subject-matter when there is no other clue to its interpretation. If the subject be realty, the term should be understood in its technical import; and if the subject be personalty, the same term should be held as importing "distributee," or "successor." (4 *Kent, p.* 536; 2 *Williams on Exrs., p.* 727.)

M. C. JOHNSON for appellants.

HUNT & BECK, for appellee, cited 2 *Williams on Ex.*, 727; 4 *Kent,* 536.

JUDGE ROBERTSON DELIVERED THE OPINION OF THE COURT:

The only question for our consideration is, whether, as adjudged by the circuit court, the surviving widow of *James B. Clay,* who died intestate, is entitled to a distributive portion of a fund bequeathed by the will of his deceased father, *Henry Clay, of Ashland,* in the following words—succeeding a bequest of a residual portion of personalty to each of his two sons, *Thomas H. and James B. Clay*—"It is my will and intention that the said fund, in equal proportions, shall finally pass to such persons as each of my said sons, as to his part, shall finally direct, by his last will and testament, and, in default of such will, *to their respective heirs, according to the Kentucky statute of distributions.*"

At the date of the publication of *H. Clay's* will, the statutes of descent and distributions were separate and distinct enactments. And he must be presumed to have known the essential difference between the descent of real estate, according to the statute of descents, and the distribution of personal estate, according to the statute of distribution.

The term " *heirs,*" in a will, should be interpreted according to the subject-matter, when there is no other clue to its interpretation. If the subject be realty, the term should be understood in its technical import; and if the subject be personalty, the same term should be held as importing distributees or successors. If this be so, then, had the testator said only that, on the prescribed contingency, the fund should go to J. B. *Clay's* " heirs," it would still be distributable, not as real,

but as personal estate. This seems to us to be the only consistent or rational interpretation of the testator's intent—and is, moreover, fortified by abundant and uncontradicted authority, as shown and illustrated in *4th Kent's Com.*, *p.* 536, and *2d Williams on Exrs.*, *p.* 727, and the cases therein cited. And that such was the testator's purpose is, apparently, made conclusive by his adding "*according to the Kentucky statute of distributions.*"

The successors to personal estate cannot take as heirs in the technical sense. And it would be inconsistent to suppose that the testator meant that the persons among whom the fund was to be distributed should be those of *J. B. Clay's* blood, who, alone, would be his heirs if the estate had been real, but should nevertheless take, according to the statute of distributions, thereby excluding the widow, who is not such an heir. Had such been his meaning, he would, more concisely and much less ambiguously, have said only that the fund should go to J. B. *Clay's* children, who are his only technical heirs. Why, then, did he use the word "*heirs*," and add "according to the Kentucky statute of distributions?" Only, as we think, because he intended that the fund should be distributed, as that law would distribute it, among those who, in the popular sense, are the heirs of personalty. And there being, in the technical sense, no *heirs* of personal estate, that term, in the legatory clause we have quoted, was, apparently, used in its popular sense as synonymous with distributees or successors.

We are of the opinion that the only consistent or maintainable construction is, that the testator intended that this legacy should be distributed among the persons designated by the statute of distributions, and in the proportions thereby prescribed. And that, consequently, J. B. *Clay's* widow, now appellee, is entitled to one third of the fund, and her children, the appellants, to the residue.

Wherefore, as this was the decision of the circuit court, the judgment is affirmed.

[JUDGE MARSHALL did not sit in this case.]